IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Action No. 06-cv-01145 - LTB- PAC

COALITION FOR EQUAL RIGHTS, INC.,
a Colorado Corporation; and
SHARI WARREN, d/b/a SPIRIT KEEPER,

    Plaintiffs,
v.

BILL OWENS, GOVERNOR, State of Colorado;
JOHN SUTHERS, Colorado Attorney General;
RICK GRICE, Executive Director, Colorado Department of Labor and Employment;
JOE MORALES, Executive Director, Colorado Department of Public Safety;
DENNIS ELLIS, Executive Director, Colorado Department of Public Health and Environment;
MIKE COFFMAN, Colorado State Treasurer;
All in their official capacities; and
SCOTT WILLIAM STOREY, in his official
Capacity as District Attorney, First Judicial
District;
MICHAEL RICHARD MORRISSEY, in his
Official capacity as District Attorney, Second
Judicial District;
LEE ALLEN HAWKE, in his official capacity as
District Attorney, Third Judicial District;
JOHN R. NEWSOME, in his official capacity as
District Attorney, Fourth Judicial District;
MARK D. HURLBERT, in his official capacity as
District Attorney, Fifth Judicial District;
CRAIG STEPHEN WESTBERG, in his official
Capacity as District Attorney, Sixth Judicial District;
GEOFFREY R. NIMS, in his official capacity as
District Attorney, Seventh Judicial District;
LARRY R. ABRAHAMSON, in his official
Capacity as District Attorney, Eighth Judicial District;
COLLEN. D. TRUDEN, in her official capacity
As District Attorney, Ninth Judicial District;
WILLIAM THIEBAUT JR., in his official
Capacity as District Attorney, Tenth Judicial
District;
MOLLY K. CHILSON, in her official capacity as
District Attorney, Eleventh Judicial District;

PETER L. COMAR, in his official capacity as
District Attorney, Twelfth Judicial District;
ROBERT E. WATSON, in his official capacity as
District Attorney, Thirteenth Judicial District.
BONNIE S. ROESINK, in her official capacity as
District Attorney, Fourteenth Judicial District;
MICHAEL JOHN DAVIDSON, in his official
Capacity as District Attorney, Fifteenth Judicial District;
RODNEY DANN FOURACRE, in his official
Capacity as District Attorney, Sixteenth Judicial District;
DONALD SPENCE QUICK, in his official
Capacity as District Attorney, Seventeenth Judicial
District;
CAROL A. CHAMBERS, in her official capacity as
District Attorney, Eighteenth Judicial District;
KENNETH R. BUCK, in his official capacity as
District Attorney, Nineteenth Judicial District;
MARY T. LACY, in her official capacity as District
Attorney, Twentieth Judicial District;
PETER G. HAUTZINGER, in his official capacity as
District Attorney, Twenty-First Judicial District;
JAMES W. WILSON, in his official capacity as
District Attorney, Twenty-Second Judicial
District; and
THE STATE OF COLORADO,

Defendants.

_____

Order
_____

Plaintiffs the Coalition for Equal Rights, Inc., ("CER") and Shari Warren, ("Warren") filed a complaint against the Governor of Colorado, the Attorney General of Colorado, the Colorado Treasurer, the heads of three Colorado State Agencies, and all twenty-two Colorado District Attorneys seeking declaratory and injunctive relief to prevent Col. Rev. Stat. § 25-14-201 *et seq.*, the Colorado Clean Indoor Air Act ("the Act") from going into effect July 1, 2006. Plaintiffs seek

a Temporary Restraining Order ("TRO") under Fed. R. Civ.P. 65(a), contending that the Act violates their state and federal constitutional rights. A hearing was held June 23, 2006 on the motion for a TRO. For the reasons discussed below, and on the early state of the record, plaintiffs' motion for a TRO is DENIED.

## I. BACKGROUND

Plaintiffs seek a TRO to prevent implementation and enforcement of the Act, arguing that it violates their rights under the Constitution of the United States and the State of Colorado. The Act, signed into law March 27, 2006, will go into effect July 1, 2006. The Act states that "it is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to environmental tobacco smoke in most indoor areas," Col. Rev. Stat. § 25-14-202, and establishes broad restrictions on indoor smoking. The Act prohibits smoking in most indoor areas, including "any place of employment that is not exempted," Col. Rev. Stat. § 25-14-204(1)(k)(I), " food service establishments,"(l), "bars" (m), "limited gaming facilities and any other facilities in which any gaming or gambling activity is conducted," (n), "billiard or pool halls" (s), and "facilities in which games of chance are conduced."(t).

The Act also carves out several important exceptions to this prohibition, including cigar-tobacco bars, airport smoking concessions, and licensed casinos. Col. Rev. Stat. § 25-14-205. The Act requires employers in exempt facilities to provide a smoke-free area to employees on request. Col. Rev. Stat. § 25-14-206(2). The Act makes it unlawful for an owner or manager to violate any provision of the Act, and also makes it unlawful for a person to smoke in a prohibited area. Col. Rev. Stat. §§ 25-14-208(1) & (2). Violators of the Act are subject to a Class 2 Petty Offense, punishable by a fine of no more than $200 for a first offense, not to exceed $300 for a

second offense and not to exceed $500 for each additional offense. Col. Rev. Stat. § 25-14-208(3).

Plaintiff CER is a non-profit corporation based in Colorado. It is an association of more than 500 businesses, including owners of bars and taverns, bowling alleys, billiard clubs, restaurants, liquor stores and others. Many CER member-businesses allow smoking, either in part or all of their establishments, to accommodate their customers who smoke. Plaintiff Warren is the owner of Spirit Keeper Tavern in Black Forest, Colorado. Spirit Keeper is licensed to serve alcoholic beverages and offers live music, cards, billiards and other entertainment. According to Warren's affidavit, at least 90 percent of the patrons smoke, and Warren allows smoking throughout the restaurant.

Plaintiffs seek a TRO to prevent the Act from coming into effect, arguing that it violates their rights under the state and federal constitutions.

## II. STANDARD OF REVIEW

The limited purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. University of Colorado,* 427 F.3d 1253, 1258 (10th Cir. 2005) [quoting *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L.Ed.2d 175 (1980)]. A preliminary injunction is "an extraordinary remedy" and should be granted "only in cases where the necessity for it is clearly established." *Id.*

In the Tenth Circuit, it is well established that a preliminary injunction can only be issued under Fed. R. Civ. P. 65 when the following four conditions are satisfied: 1) the moving party has a substantial likelihood of success on the merits, 2) the movant will suffer irreparable injury if the injunction is denied, 3) the threatened injury to the movant outweighs the injury to the other

party, and 4) the injunction is not adverse to the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). If a plaintiff shows that the latter three requirements "tip strongly in his favor," the plaintiff can meet the first requirement by showing that the merits of the case "are so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1255-1256 (10th Cir. 2003). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.*

When a TRO is considered with notice to the parties and a hearing, the standards and procedures for considering a TRO are the same as for a preliminary injunction. *Levas and Levas v. Village of Antioch, Ill.,* 684 F.2d 446, 448 (7th Cir. 1982). *See also Kansas Hospital Ass'n v. Whiteman,* 835 F.Supp. 1548, 1551 (D. Kan 1993).

### III. DISCUSSION

A.  Substantial Likelihood of Success on the Merits

Plaintiffs challenge the Act facially and as applied. In a facial challenge "the challenger must establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 697 (1987). Although the Tenth Circuit has applied the *Salerno* standard numerous times, *see West v Derby Unified School District No. 260,* 206 F.3d 1358, 1367 (10th Cir. 2000) and *Public Lands Council v. Babbitt,* 167 F.3d 1287, 1293 (10th Cir. 1999), the Supreme Court has, since *Salerno,* pondered whether it should be applied literally, s*ee Washington v. Glucksberg,* 521 U.S. 702, 739-740, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) (Stevens, J., concurring), causing the Tenth Circuit to question whether *Salerno* remains good law. *U.S. v. Castillo,* 140 F.3d 874, 879 (10th Cir. 1998).

5

However, even under more lenient facial challenge standards the challenger must establish that "the invalid applications of a statute 'must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Glucksberg,* 521 U.S. at 740. So, to invalidate the Act on its face, plaintiffs must show either that the Act is in all respects unconstitutional, or at the very least that the applications of the Act that are unconstitutional are substantial in relation to the applications that are constitutional.

For an as applied challenge, it is significant that this Act has not yet been enforced or gone into effect. I therefore do not have sufficient facts before me to consider an as applied challenge. Accordingly I will consider plaintiff's TRO application only in the context of their likelihood to succeed on the merits in a facial challenge.

      a.      Equal Protection

Plaintiffs argue that the Act violates the equal protection clause of the 14th amendment because it treats them differently from other similarly situated commercial establishments. "The Equal Protection Clause requires the government to treat similarly situated people alike." *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998). When a challenged statute does not affect a protected class or involve a fundamental right, it will be overturned only if it does not meet the rational basis standard. *Edwards v. Valdez*, 789 F.2d 1477, 1483 (10th Cir. 1986). Under this standard, a law is presumed valid and the Government must only show that it is "rationally related to a legitimate state interest." *Id.* Social and economic legislation subject to rational basis review "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel v. Indiana,* 452 U.S. 314, 331-332 (1981). Thus, the burden is on plaintiffs to show that the Act is irrational. The test for rationality review in equal

6

protection cases is the same under the Colorado Constitution. *People v. McKnight,* 617 P.2d 1178, 1185 (Colo. 1980).

Plaintiffs do not appear to dispute that the Act's stated purpose of protecting the public health of Colorado citizens is a legitimate state interest. Rather, plaintiffs argue that the Act is not rationally related to this objective because the Act's exceptions undermine its basic purpose. The Act's stated purpose is to protect non-smokers from second-hand smoke in public places and places of employment. Col. Rev. Stat. § 25-14-202. However, the Act exempts bars and restaurants in licensed casinos and smoking lounges in public airports. The Act specifically covers facilities in which games of chance are conducted but excludes licensed casinos. Plaintiffs contend that this exemption renders the act irrational and thus unconstitutional.

Plaintiffs misapprehend the nature of rationality review under the equal protection clause. A law does not violate equal protection merely because it is "unwise or unartfully drawn." *Edwards,* 789 F.2d at 1483. State laws do "not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Id.* To be stricken, the law must be "wholly irrelevant to the achievement of the state's objective," *McGowan v. State of Md.,* 366 U.S. 420, 425 (1961), or "so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the legislature's actions were irrational." *Hodel,* 452 U.S. at 332.

Moreover, the relevant test is not whether the classifications imbedded in the Act are rationally related to the Government's <u>stated</u> objective. The Act survives constitutional scrutiny if its distinctions are rationally related to any <u>conceivable</u> government purpose, whether or not stated in the law or contained in the legislative record. *F.C.C. v. Beach Communications, Inc.,*

7

508 U.S. 307, 315 (1993) ("[T]hose attacking the rationality of a legislative classification have the burden to negative every conceivable basis which might support it. . . because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.") *Accord Powers v. Harris,* 379 F.3d 1208, 1216-1218 (10th Cir. 2004).

Plaintiffs thus must overcome the high threshold for a TRO and the high threshold for showing the Act is irrational. They have not met this burden. The Government contends that casinos were exempted from the Act because of their unique constitutional and statutory status in Colorado, because casino gambling has only recently become legal in Colorado, because many of the towns in which casinos are located have become dependent on the revenues they generate and because they face severe competition from Indian Reservation casinos. Even the state derives economic benefit from its licensed casinos. Plaintiffs suggest that the revenues from casinos are an improper basis for making such a distinction, but provide no authority for the proposition that a consideration of fiscal impacts and cost benefit analysis is an improper basis for a Government decision under rational basis review. Smoking areas in airports were exempted from the Act because there are only a few commercial airports in Colorado, and because confining smoking to specific lounges sufficiently protects the rights of non-smokers. DIA caters significantly to non-Coloradans, many of whom never leave the airport. At this early stage of the case, plaintiffs have failed to meet their burden to show that the Act is irrational.

Plaintiffs contend that certain goals, such as the "bare . . . desire to harm a politically unpopular group," is not a legitimate government interest. *City of Cleburne, Tex., v. Cleburne Living Center,* 473 U.S. 432, 446-447 (1985). *See also U.S. Dep't of Agriculture v. Moreno,* 413

8

U.S. 528, 534 (1973) (where the legislative record showed that the actual purpose of the challenged legislation was "to prevent 'hippies' and 'hippie communes' from participating in the food stamp program."). However, plaintiffs have presented no evidence and has not made an argument that the Government was motivated invidiously to harm plaintiffs or the group that plaintiffs represent. The Act is not, like *Cleburne* or *Moreno*, a thinly veiled effort to harm an unpopular or politically weak group. Rather it is the kind of legislative "line-drawing" that is the province of legislatures, and which is not constitutionally suspect merely because some entities "are placed in different sides of the line, and the fact that the line might have been drawn differently at some points." *Beach,* 508 U.S. at 315-316.

Accordingly, plaintiffs' equal protection claim does not show a substantial likelihood of prevailing on the merits.

b. Substantive Due Process

Plaintiffs argue next that the Act violates Constitutional guarantees of due process because it 1) imposes criminal liability for the criminal acts of others, 2) is vague as to its application of criminal penalties and 3) deprives plaintiffs of property rights implicit in the concept of ordered liberty, by regulating conduct in Plaintiff's private property in ways not rationally related to the Act's stated purpose. I will consider each of these due process concerns.     i.

The Act is Void for Vagueness

Plaintiffs challenge provisions of the Act as being unconstitutionally vague. A law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). A statute can be impermissibly vague either because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or

9

because "it authorizes or even encourages arbitrary and discriminatory enforcement." *Faustin v. City and County of Denver, Colo.*, 423 F. 3d 1192, 1201-1202 (10th Cir. 2005)[citing *Hill v. Colorado,* 530 U.S. 703, 732 (2002)]. Statutes are similarly void for vagueness under the Colorado Constitution. *People v. Reed*, 932 P.2d 842, 845 (Colo. Ct. App. 1996), *People v. Quinn,* 549 P.2d 1332, 1334 (Colo. 1976) ("The traditional test for vagueness is whether a statute gives fair warning of forbidden conduct so that men of ordinary intelligence can understand the statute's meaning and application.")

Plaintiffs contend that the Act's definition of "employee," combined with the Act's exemption of employers with fewer than three employees, renders the Act impermissibly vague. Section 25-14-203(5) defines employees broadly to include "any person" who (I) "performs any type of work for benefit of another in consideration of direct or indirect wages or profit," or (II)" "provides uncompensated work or services to a business or nonprofit entity." Section 25-14-205(b) states that employees include "every person"covered by 5(a) "regardless of whether such person is referred to as an employee, contractor, independent contractor, or volunteer or by any other designation or title." Plaintiffs argue that this definition of employee does not define minimum hours, times or calendar periods, and is thus impermissibly vague.

I find this argument unpersuasive. The Act may be broad, but breadth is not vagueness. The Act's language speaks for itself. Section 5(a) states that an employee is "any person" who falls into the listed categories. Section 5(b) states that "employee includes every person described in paragraph (a)." Plaintiffs' real argument appears to be that this definition of employee is so inclusive that it effectively nullifies the small-employer exemption. Perhaps. But laws with a broad sweep are not unconstitutionally vague. Plaintiff Warren states that she cannot ascertain the

10

meaning of these provisions, and does not know if the independent contractor who performs bi-weekly maintenance is an employee under the Act. But the act states plainly that an employee is "any person who performs any kind of work for benefit of another in consideration of direct or indirect wages or profit," and that this applies regardless of whether such person is referred to as an independent contractor. Warren may not like this language, but it does not suffer from lack of clarity. Additionally, there is no question that this provision will not be unconstitutionally vague in all or most of its applications. On this basis alone a facial challenge is unlikely to succeed.

For all of these reasons, I conclude that plaintiffs do not have a substantial likelihood of success on the merits on this provision.

    ii.  The Act Imposes Criminal Liability on Plaintiffs for Independent Criminal Acts of Others

Plaintiffs contend that the Act impermissibly imposes criminal liability for the acts of others by imposing criminal penalties on the owners of bars and restaurants if their customers choose to smoke at their restaurants. Plaintiffs argue that imposing criminality on the basis of a loose association with criminality activity violates due process. *Scales v. U.S.* 367 U.S. 203, 224-225 (1961). However, the Act makes smoking at a covered location unlawful, and prohibits an owner from <u>permitting</u> smoking at a covered location. So the Act does not penalize owners for the voluntary act of a customer choosing to smoke; the Act penalizes Owners for permitting a customer to smoke in an establishment that the Owner or Manager controls. This does not criminalize owners for the act of others; it criminalizes owners for their own actions.

    iii.  The Act Violates Fundamental Rights

Plaintiffs argue that the Act also violates the substantive due process guarantees of the

United States and Colorado constitutions. The due process clause of the 14th amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Glucksberg,* 521 U.S. at 719. Fundamental rights are those that are "implicit in the concept of ordered liberty," or a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 951 (1992). Similarly, the Colorado constitution also protects fundamental rights under its due process guarantees. *People v. Strean,* 74 P.3d 387, 394 (Colo. Ct. App. 2002). Laws that abridge fundamental rights are subject to strict scrutiny, and "must be precisely tailored to further a compelling government interest." *Goetz v. Glickman,* 149 F.3d 1131, 1140 (10th Cir. 1998).

Plaintiffs argue, apparently, that the act violates their fundamental rights by giving employees the right to demand a smoke-free environment within another's private property, and that it violates their right to allow or disallow smoking within their places of business. The plaintiffs contend that this will "decimate private business who depend upon loyal customers built up over generations who smoke."

However, plaintiffs do not state with clarity what fundamental right the Act violates. Plaintiffs seem to contend that they have a fundamental right to allow smoking in their establishments. They provide no support for this statement. Also, the Act itself renders smoking indoors to no longer be an "otherwise legal activity." The notion that the right to allow smoking in one's bar or restaurant is a fundamental right, equivalent to the other rights the Supreme Court has deemed fundamental, such as the right to travel, the right to vote, the right to procreate and the right to marry, is to say the least, far fetched. Plaintiffs do not point to any Supreme Court or

Tenth Circuit authority supporting this notion of a fundamental right to allow smoking at a bar or restaurant, or to operate a bar or restaurant free from public health and safety regulation. Even the Colorado case plaintiffs cite, *Western Income Properties, Inc., v. City and County of Denver,* 485 P.2d 120, 121 (Colo. 1971), states explicitly that "The use to which an owner may put his property is subject to a proper exercise of the police power," and is thus valid so long as it has "some tendency reasonably to serve the public health, safety, morals or general welfare."

Plaintiffs contend that the Act fails even under the more lenient standards of rationality review. However, plaintiffs mis-state the relevant test for rationality review, contending that the regulation must be "related to the articulated state interest," citing *Allright Colorado, Inc., v. City and County of Denver,* 937 F.2d 1502, 1512 (10th Cir., 1991). But, *Allright Colorado* stands for the opposite proposition, that "Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the state's goals and only if no grounds can be conceived to justify them." *Id.* This standard is the same as the one governing rationality review in equal protection doctrine, which, as discussed above, plaintiffs are unable to meet.

      c.      The Act Contains Impermissible Ex Post Facto Provisions

Plaintiffs argue that the provision of the Act barring the expansion of tobacco bars as of December 31, 2005, Col. Rev. Stat. § 25-14-204(2) constitutes an invalid ex post facto law. In general, the principle underlying the ban on *ex post facto* laws prohibits enforcing legislation with a retroactive effect. *Republic of Austria v. Altmann,* 541 U.S. 677, 717 (2004). This principle is embodied in the Colorado and United States Constitutions. Plaintiffs contend that since the Act will make a cigar-tobacco bar owner liable for violating the Act if he chooses to expand his bar between the dates of December 31, 2005 and July 1, 2006, the Act is retroactive and prohibited.

Defendants make numerous arguments in defense of this provision. First, they challenge whether plaintiffs have standing to bring this claim because they do not allege facts showing they will suffer an injury in fact from this provision. Defendants contend that none of the plaintiffs have shown that they will lose an exemption based on an expansion or conversion that occurred after December 31, 2005. In fact, Warren alleges that she may wish to expand her facility into a tobacco bar in anticipation of the law coming into effect, and that the look-back provision prevents her from being eligible for the tobacco bar provision. Also, at the hearing, CER stated that at least one of its members qualifies as a tobacco bar and contemplates expansion prior to July 1, 2006.

Assuming that plaintiffs have standing to challenge these provisions, defendants also argue that the bar on ex post facto laws applies only to a law that "retroactively alters the definition of crimes or increases the punishment of criminal acts." *U.S. v. Andrews,* 447 F.3d 806, 809 (10th Cir. 2006). A law is not an impermissible ex post facto law "merely because it might operate on a fact or status pre-existing the effective date of the legislation, as long as its punitive features apply only to acts committed after the statutory prescription becomes effective." *People v. Billips,* 652 P.2d 1060, 1064 (Colo 1982).

Here, defendants contend that the Act's exemption for tobacco-bar owners applies only to establishments that meet the relevant requirements as of December 31, 2005. They argue further that the punitive features of the Act contained in 25-14-208 apply only to acts after the effective date of the Act. Under this reading of the Act, a tobacco bar owner who disregards the Act and expands his bar between December 31, 2005 and July 1, 2006 suffers no penalty, but only the status of his tobacco bar as of December 31, 2005 will be considered to assess eligibility for the

14

exemption.

The provision of the Act defining an exempt tobacco bar based on its status as of December 31, 2005 is not ex post facto. While this provision does prevent the development of any new tobacco bars, it does not retroactively change the definition of a crime or alter a punishment. It only defines the class of establishments entitled to this statutory exemption. However, Col. Rev. Stat. § 25-14-204(2) states that "a cigar-tobacco bar shall not expand the size and location in which it existed as of December 31, 2005," and Col. Rev. Stat. § 25-14-208 makes it unlawful for any owner to violate any provision of the Act. On its face, this language means that a qualified tobacco bar owner as of December 31, 2005 who chooses to expand after December 31, 2005 but prior to July 1, 2006 is subject to the Act's criminal penalties. This appears to criminalize activity prior to the enactment date, and seems to be an ex post facto provision. While defendants' state that the penalty provisions do not affect acts committed prior to the Act's effective date, this interpretation is contrary to the plain language of the Act.

I find this provision troubling, and the constitutionality of this provision is a much closer question than the others plaintiffs raise. Nevertheless, the threshold for injunctive relief is high, and plaintiffs' argument on this single provision of the Act is insufficient to meet their burden of a substantial likelihood of success. Also, the Act contains a severability provision, Col. Rev. Stat. § 25-14-209, so even if this provision proves to be unconstitutional it can be severed without affecting the remainder of the Act.

   d..  The Act Violates the Colorado Constitution's Bar on Special Legislation

Plaintiffs argue that the Act is prohibited Special Legislation under Article V of the Colorado Constitution. Colo. Const. art. V. sec. 25. However, legislation is valid under this

15

provision as long as it passes a rationality test similar to the test that applies under equal protection and due process doctrines. The legislature may enact laws under this provision if they have a "reasonable basis," even if "some inequality may result." *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 828 (Colo. 1982). "The burden is on the appellant to demonstrate that the classification is arbitrary and unreasonable." *Id.* As discussed above, plaintiffs have failed to meet their burden to show that the Act is arbitrary or unreasonable, so this argument is unlikely to succeed.

B. <u>Irreparable Injury</u>

Plaintiffs make two arguments for irreparable injury. First, they contend that where, as here, their constitutional rights have been violated, Courts will assume the injury is irreparable. There are two basic flaws to this argument. First, plaintiffs have not shown a substantial likelihood of success on their constitutional arguments, and so have not shown a constitutional violation. Second, Constitutional violations are only presumptively irreparable injuries when the nature of the constitutional injuries renders them irreparable. Courts have found claims based on first amendment free speech violations to constitute irreparable harm because of the unique nature of that right and because of the inherent inability of monetary awards to provide relief for such a violation. *See Pacific Frontier v. Pleasant Grove City,* 414 F.3d 1221, 1236 (10th Cir. 2005), *Utah Licensed Beverage Ass'n v. Leavitt,* 256 F.3d 1061, 1076 (10th Cir. 2001), *Elrod v. Burns,* 427 U.S. 347, 373-374 n29 (1976). Plaintiffs have not cited any authority, and I am not aware of any, to support the proposition that <u>any</u> alleged constitutional violation satisfies the element of irreparable injury merely because it is an alleged constitutional violation.

Plaintiffs also argue that their injury is irreparable because they will lose revenues from the

16

smoking ban. They predict that they will lose smoking customers, that they will lose customers to tobacco bars, that they will not recoup these customers and that the diffuse nature of these losses makes their value unquantifiable, and so not subject to an award of money damages. Defendants argue that plaintiffs' bare assertions of economic harm, absent more, are insufficient. Here, plaintiffs have provided affidavits from Warren and from James Von Feldt, President of CER, attesting to likely loss of customers if the Act goes into effect. Importantly, plaintiffs in their complaint do not seek money damages. Finally, defendants contend that plaintiffs' delay in bringing this action until June 15, 2006, more than eleven weeks after the Act was signed on March 27, 2006 and only two weeks before its effective date of July 1, 2006, demonstrates unnecessary delay that undermines their claim for irreparable harm. *Kansas Health Care Ass'n, Inc., v. Kansas Dept. of Social and Rehab. Serv.,* 31 F.3d 1536, 1543-44 (10th Cir. 1994).

I conclude that this factor slightly favors granting the TRO. While the economic loss to plaintiffs is somewhat speculative, the affidavit testimony is sufficiently credible as to be worth some weight. The harm plaintiffs will allegedly suffer is economic, which generally is not a basis for a TRO. However, in this case the economic harm is likely unquantifiable, and plaintiffs do not seek money damages. While defendants argue that the smoking ban may help plaintiffs' business, I must consider an owner's opinion about her business interests to be more credible than that of her litigation adversary.

C.  Adverse to the Public Interest

The Defendants contend that the public interest will be harmed by a TRO both because it will extend the amount of time the public is subject to second hand smoke and because failure to

implement the Act will cause public confusion, since the State has already spent time and about $1 million preparing the public for enactment of this law. Since the people of the State of Colorado have managed since 1876 without a ban on indoor smoke, I do not consider the delay of a few weeks or months to be consequential. Also, whatever public confusion may be caused in a delay of enactment will not be substantial. In a society where the Judiciary has the power to review legislative acts, the public has come to learn that the interplay between the branches occasionally delays the implementation of laws.

On the other hand, the state's expenditure of $1 million is not inconsequential. A delay in implementing this law likely would mean spending additional funds if the law is eventually implemented. In addition, there is a public interest in respecting the prerogatives of the democratically elected state legislature. Plaintiffs, like all citizens, had the ability to make their arguments on policy grounds to the legislature during consideration of this law. As stated above, judicial intervention to thwart the will of the legislature is an extreme remedy. It is especially so when no fundamental right or protected class is implicated. For Courts to cavalierly enjoin state laws "would paralyze state governments." *Powers,* 379 F.3d at 1218. To take such an "exalted role" would mean "nothing more than substituting our view of the public good or the general welfare for that chosen by the states." *Id.* "There simply is no constitutional or Platonic form against which we can (or could) judge the wisdom" of legislative decisions. *Id.* This is especially true of "the regulatory actions of states, who, in our federal system, merit great respect as separate sovereigns." *Id*. I conclude that there is a public interest in this Court declining to prevent the implementation of the Act because judicial restraint in this instance will breed respect for the separation of powers, and thereby for our democratic system.

Based on the weighing of these considerations, I find this factor to disfavor granting a TRO.

D.    Injury to Plaintiffs Outweighs Damage to the Non-Moving Party

This element flows from the preceding two. Since there is some evidence of irreparable injury to the plaintiffs, and some adverse impact on the public, this factor slightly disfavors a TRO. The injury to the plaintiffs does not outweigh the damage to the public.

Overall, plaintiffs have failed to meet their burden for a TRO. Injunctive relief is an extreme remedy and requires plaintiffs to make a strong showing on all four elements of a TRO. Plaintiffs have not shown a significant likelihood of success and have not made a strong case on the other three elements. This is wholly insufficient to justify injunctive relief.

Plaintiffs' motion for a temporary restraining order (Docket # 2) is DENIED.

**DONE and ORDERED,** this ___23rd___ day of June, 2006 at Denver, Colorado.

    s/Lewis T. Babcock
    United States District Chief Judge