**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 06-cv–01145 - LTB - PAC

COALITION FOR EQUAL RIGHTS, INC.,
a Colorado Corporation; and
SHARI WARREN, d/b/a SPIRIT KEEPER,

      Plaintiffs,

v.

BILL OWENS, GOVERNOR, State of Colorado;
JOHN SUTHERS, Colorado Attorney General;
RICK GRICE, Executive Director, Colorado Department of Labor and Employment;
JOE MORALES, Executive Director, Colorado Department of Public Safety;
DENNIS ELLIS, Executive Director, Colorado Department of Public Health and Environment;
MIKE COFFMAN, Colorado State Treasurer;
All in their official capacities; and
SCOTT WILLIAM STOREY, in his official
Capacity as District Attorney, First Judicial
District;
MICHAEL RICHARD MORRISSEY, in his
Official capacity as District Attorney, Second
Judicial District;
LEE ALLEN HAWKE, in his official capacity as
District Attorney, Third Judicial District;
JOHN R. NEWSOME, in his official capacity as
District Attorney, Fourth Judicial District;
MARK D. HURLBERT, in his official capacity as
District Attorney, Fifth Judicial District;
CRAIG STEPHEN WESTBERG, in his official
Capacity as District Attorney, Sixth Judicial District;
GEOFFREY R. NIMS, in his official capacity as
District Attorney, Seventh Judicial District;
LARRY R. ABRAHAMSON, in his official
Capacity as District Attorney, Eighth Judicial District;
COLLEN. D. TRUDEN, in her official capacity
As District Attorney, Ninth Judicial District;
WILLIAM THIEBAUT JR., in his official
Capacity as District Attorney, Tenth Judicial
District;
MOLLY K. CHILSON, in her official capacity as

District Attorney, Eleventh Judicial District;
PETER L. COMAR, in his official capacity as
District Attorney, Twelfth Judicial District;
ROBERT E. WATSON, in his official capacity as
District Attorney, Thirteenth Judicial District.
BONNIE S. ROESINK, in her official capacity as
District Attorney, Fourteenth Judicial District;
MICHAEL JOHN DAVIDSON, in his official
Capacity as District Attorney, Fifteenth Judicial District;
RODNEY DANN FOURACRE, in his official
Capacity as District Attorney, Sixteenth Judicial District;
DONALD SPENCE QUICK, in his official
Capacity as District Attorney, Seventeenth Judicial
District;
CAROL A. CHAMBERS, in her official capacity as
District Attorney, Eighteenth Judicial District;
KENNETH R. BUCK, in his official capacity as
District Attorney, Nineteenth Judicial District;
MARY T. LACY, in her official capacity as District
Attorney, Twentieth Judicial District;
PETER G. HAUTZINGER, in his official capacity as
District Attorney, Twenty-First Judicial District;
JAMES W. WILSON, in his official capacity as
District Attorney, Twenty-Second Judicial
District; and
THE STATE OF COLORADO,

     Defendants.

_____

## MEMORANDUM OPINION AND ORDER
_____

Babcock, C.J.

     This Order addresses cross-motions for summary judgment under Fed.R.Civ.P. 56 filed by

Plaintiffs the Coalition for Equal Rights, Inc., ("CER") and Shari Warren, ("Warren"), and

defendants the State of Colorado, Governor Bill Owens and 21 of 22 Colorado District Attorneys

(referred to herein as "the State Defendants."). CER and Warren (referred to herein collectively

as "Plaintiffs") seek summary judgment declaring the Colorado Clean Indoor Air Act ("the Act") unconstitutional as violating the equal protection provisions of the Colorado and United States Constitutions, substantive due process under the Colorado and United States Constitutions, the provisions of the Colorado Constitution barring Special Legislation, and the provisions of the Colorado and United States Constitutions barring retroactive legislation. The State Defendants seek summary judgment declaring the Act constitutional. For the reasons stated below, Plaintiffs' motion is DENIED and the State Defendants' motion is GRANTED.

## I. BACKGROUND

The Act, signed into law March 27, 2006, and effective as of July 1, 2006 imposes broad restrictions on indoor smoking. The Act's preamble states that "it is in the best interest of the people of this state to protect nonsmokers from involuntary exposure to environmental tobacco smoke in most indoor areas," and defines as its purpose "to preserve and improve the health, comfort, and environment of the people of this state by limiting exposure to tobacco smoke." Colo. Rev. Stat. § 25-14-202. The Act prohibits smoking in most indoor areas, including "any place of employment that is not exempted," Colo. Rev. Stat. § 25-14-204(1)(k)(I), including "food service establishments,"(l), "bars" (m), "limited gaming facilities and any other facilities in which any gaming or gambling activity is conducted," (n), "billiard or pool halls" (s), and "facilities in which games of chance are conduced."(t).

Exempt from the Act's prohibitions on indoor smoking are cigar-tobacco bars, airport smoking concessions, and licensed casinos. Colo. Rev. Stat. § 25-14-205. The Act makes it unlawful for an owner or manager to violate any provision of the Act, and also makes it unlawful for a person to smoke in a prohibited area. Colo. Rev. Stat. §§ 25-14-208(1) & (2). Violators of

the Act are subject to a Class 2 Petty Offense, punishable by a fine of no more than $200 for a first offense, not to exceed $300 for a second offense and not to exceed $500 for each additional offense. Colo. Rev. Stat. § 25-14-208(3).

CER is a non-profit corporation based in Colorado. It is an association of more than 500 businesses, including owners of bars and taverns, bowling alleys, billiard clubs, restaurants, liquor stores, bingo halls and others. Many CER member-businesses, prior to implementation of the Act, allowed smoking, either in part or all of their establishments. Warren is the owner of Spirit Keeper Tavern in Black Forest, Colorado. Spirit Keeper is licensed to serve alcoholic beverages and offers live music, cards, billiards and other entertainment. Prior to implementation of the Act, at least 90 percent of Spirit Keepers' patrons smoked, and Warren allowed smoking throughout the restaurant.  CER asserts that its members have suffered financial losses from the Act's ban on smoking in their restaurants and other establishments.

Plaintiffs filed their initial complaint June 15, 2006, seeking injunctive and declaratory relief, but not money damages. Also on June 15, 2006 Plaintiffs sought a Temporary Restraining Order ("TRO") to prevent the law from going into effect. After a TRO Hearing June 23, 2006 at which both parties made oral arguments, I issued an Order June 23, 2006 denying the TRO ("June 2006 Order"). On that same day, pursuant to Fed.R.Civ.P. 65(a)(2), I combined the preliminary injunction hearing with the trial on the merits.

Before me now are cross-motions for summary judgment filed by both parties, as well as an Amici brief in support of the State Defendants filed by Interested Parties the American Cancer Society, Great West Division, the American Heart Association, Pacific/Mountain Affiliate, the American Lung Association of Colorado and the Colorado Tobacco Education and Prevention

Alliance. Defendant Thiebaut does not join the motion of the other 21 District Attorneys, and files his own response to Plaintiffs' motion.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the parties dispute some facts relating to the actual injuries CER's member organizations have suffered as a result of the Act, no facts are in dispute that are relevant to disposing of the constitutional issues at stake in this case.

Plaintiffs argue that the Act is facially unconstitutional. A facial challenge requires the challenger to "establish that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). It is unclear whether the Supreme Court actually intended lower courts to interpret the *Salerno* standard literally. *See Washington v. Glucksberg,* 521 U.S. 702, 739-740, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (Stevens, J., concurring). *See also U.S. v. Castillo,* 140 F.3d 874, 879 (10th Cir. 1998). However, plaintiffs in a facial challenge must, at the very least, establish that "the invalid applications of a statute 'must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Glucksberg,* 521 U.S. at 740.

Additionally, constitutional challenges must overcome the heavy presumption in favor of

the constitutionality of state laws. *See Hodel v. Indiana* 452 U.S. 314, 323, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). Challengers to a state law "bear the burden of proving it unconstitutional beyond a reasonable doubt." *Mosgrove v. Town of Federal Heights,* 543 P.2d 715, 717 (1975); *See also Colorado Criminal Justice Reform Coalition v. Ortiz,* 121 P.3d 288, 291 (Colo. Ct. App. 2005).

## III.  DISCUSSION

Plaintiffs contend that the Act violates the equal protection guarantees of the United States and Colorado Constitutions, the substantive due process provisions of the United States and Colorado Constitutions, the ban on Special legislation in the Colorado Constitution, and is retroactive legislation in violation of the Colorado and United States Constitutions. The State Defendants contend that all of Plaintiffs' arguments fail as a matter of law and that the State Defendants are entitled to summary judgment. While the standard of review for a motion for summary judgment is different from that of a TRO, the fundamental issues and arguments here are similar to those argued in the TRO phase of this case and the June 2006 Order addresses many of the issues and arguments the parties now raise. Nevertheless, in the interests of thoroughness I will again address the parties' constitutional arguments, focusing particularly on those that are new to this part of the proceeding.

A.    Equal Protection

Plaintiffs argue that the Act violates the equal protection clauses of the Colorado and United States Constitutions by barring smoking in Plaintiffs' establishments but allowing smoking in similar establishments, such as airport smoking concessions and licensed casinos. "The Equal Protection Clause requires the government to treat similarly situated people alike." *Barney v.*

*Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998). When a challenged statute does not affect a protected class or involve a fundamental right, it will be overturned only if it is not "rationally related to a legitimate state interest." *Edwards v. Valdez*, 789 F.2d 1477, 1483 (10th Cir. 1986). Social and economic legislation is presumed to be rational and this presumption "can only be overcome by a clear showing of arbitrariness and irrationality." *Hodel,* 452 U.S. at 331-332. The test for rationality review in equal protection cases is the same under the Colorado Constitution. *See People v. McKnight,* 617 P.2d 1178, 1185 (Colo. 1980).

Plaintiffs here do not explicitly challenge that the government's stated goal, protecting the public from the public health effects of indoor second-hand smoke, is a legitimate government interest. While the Plaintiffs disagree that Government intervention is necessary or appropriate in this area, they do not argue directly that this policy goal is itself unconstitutional. Rather, Plaintiffs argue that the distinctions contained in the Act, exempting licensed casinos and airport smoking lounges, are not rationally related to the Act's articulated purpose.

The thrust of the equal protection dispute here is the proper definition of rationality review. In the June 2006 Order, I stated that a law fails the rational basis test only if it is "wholly irrelevant to the achievement of the state's objective," *McGowan v. State of Md.,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), or  "so unrelated to the achievement of any combination of legitimate purposes that a court can only conclude that the legislature's actions were irrational." *Hodel,* 452 U.S. at 332. Conversely, a law is "rational" under this test if its distinctions are rationally related to any conceivable government purpose, whether or not stated in the law or contained in the legislative record. *F.C.C. v. Beach Communications, Inc.,* 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("[T]hose attacking the rationality of the

legislative classification have the burden to negative every conceivable basis which might support it. . . Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature.") *Accord Powers v. Harris,* 379 F.3d 1208, 1216-1218 (10th Cir. 2004).

Plaintiffs here attack this characterization of the rational basis test as "incrementalism," and as "excessive deference to the legislature." Plaintiffs urge this court to adopt a stronger version of rationality review, one that requires not merely a rational relationship between legislative means and ends but a "substantial" relationship. However, Plaintiffs do not offer authority that contradicts my June 2006 characterization of the rational basis test. Plaintiffs cite either to outdated Supreme Court cases, or quote selectively from Supreme Court opinions in a manner that obscures the Court's actual doctrine on rationality review.

For example, Plaintiffs invoke *Beach* to argue that this Court's prior definition of rationality review is overly deferential, and essentially renders legislative judgments unreviewable. But Plaintiffs fail to note that *Beach* stated explicitly that legislative "line-drawing" is the province of legislatures, and is not constitutionally suspect merely because some entities "are placed on different sides of the line, and the fact that the line might have been drawn differently at some points." *Beach,* 508 U.S. at 315-316. Plaintiffs rely on *Johnson v. Robison,* 415 U.S. 361, 374, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), for the proposition that legislative classifications "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation," but this same case defines the rationality test as barring legislative classifications that

are "wholly unrelated to the objective of that statute." *Id. Johnson* does not explain whether it intends "fair and substantial relation" to mean something different from "wholly unrelated."

Ironically, Plaintiffs cite the dissent in *U.S.R.R. Retirement Board v. Fritz,* 449 U.S. 166, 184, 101 S.Ct. 453, 66 L.Ed.2d 368 (1976) (Marshall, J., and Brennan, J., dissenting) for the proposition that "flimsy or implausible justifications" offered after the fact are constitutionally unacceptable. However, Plaintiffs ignore the majority opinion, which is particularly instructive for the instant case. The majority traces the evolution of rationality review since the early 20th century. *Id.* at 174-176. It cites the 1920 case that was the source of Plaintiffs' preferred language of "fair and substantial relation," and then proceeds to elaborate the more consistent, contemporary doctrine that economic and social legislation does not violate equal protection simply because it is "unwise or unartfully drawn." *Id.* at 175. The majority states:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality." *Id.* (Internal citations and quotes omitted.)

This broad definition of rationality review is consistent with the principles enunciated in more recent Supreme Court decisions. *See for example, Beach,* 508 U.S. at 315, *Romer v. Evans,* 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) ("In the ordinary case, a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous") and *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("[A] classification 'must be upheld against equal protection challenge if there is any reasonably

conceivable state of facts that could provide a rational basis for the classification.'") (Internal citations omitted.) Plaintiffs' efforts to create a higher rationality standard requiring a "substantial" relationship between legislative means and ends is, quite simply, unavailing. The prevailing authority all supports the basic conclusion that legislatures have broad discretion to make economic and social distinctions in pursuit of valid public policy goals, and courts may strike such legislation only if the distinctions are irrational and completely unrelated to any conceivable policy goal. *See Hodel,* 452 U.S. at 332; *Beach,* 508 U.S. at 315.

Under this standard, Plaintiffs are unable to meet their burden to show that the Act is irrational. The Government contends that casinos were exempted from the Act because of their unique constitutional and statutory status in Colorado, because casino gambling has only recently become legal in Colorado, because many of the towns in which casinos are located are dependent on the revenues casinos generate, because casinos face severe competition from Indian Reservation gaming and because Colorado derives direct economic benefit from its licensed casinos. Plaintiffs argue that these economic considerations are an improper basis for exempting casinos, and that their member-establishments face the same economic losses as do licensed casinos and the towns in which they are located. However, Plaintiffs provide no authority for the proposition that Government consideration of fiscal impacts and cost benefit analysis is improper under rational basis review. While it may be true that Plaintiffs will face hardships that casinos will be spared, this by itself does not render the Act unconstitutional. The Government had a reasonable basis to exclude casinos; that is sufficient for the Act to pass equal protection muster.

Plaintiffs argue further that the Act's application to bingo halls reveals the true irrationality of the Act, since it demonstrates that the Act distinguishes between two similar kinds of games of

chance. But the Government contends, and Plaintiffs do not dispute, that Casinos provide more revenue to the state and, because they are more concentrated, provide more direct economic support to the three small towns in which they are concentrated. This striking of economic balance is sufficient to satisfy rationality review.

Similarly, the Act exempts "international airport smoking areas" (of which there is only one, Denver International Airport ["DIA"], in Colorado) because confining smoking to specific lounges sufficiently protects the rights of non-smokers and because DIA caters significantly to non-Coloradans, many of whom never leave the airport. Since the goal of the legislation is to protect non-smokers from the effects of second hand smoke, the unique configuration of DIA's smoking lounge was, in the eyes of the legislature, sufficient to meet this policy goal.

Plaintiffs also suggest that they are entitled to a different, more searching standard of rationality review because legislation aimed at unpopular groups, such as smokers, is subject to more serious scrutiny. This argument is unpersuasive. While the Supreme Court has stated that "'a bare. . . desire to harm a politically unpopular group'" is insufficient to satisfy a rational basis test, *City of Cleburne Tex. v. Cleburne Living Center,* 473 U.S. 432, 446-447, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (internal citations omitted), it has never held that laws impacting politically weak or unpopular groups who are not suspect classes are subject to some different kind of rationality review. *See Heller,* 509 U.S. at 321. Moreover, even if I were to acknowledge that smokers are a weak and unpopular group like the disabled in *Cleburne,* the impacted group in this case is not smokers as a whole. Plaintiffs represent a coalition of owners of establishments who want to allow their patrons to smoke, and they challenge provisions of the Act exempting other kinds of establishments. To satisfy the criteria of *Cleburne*, they would have to present

some evidence that the Government was animated by "a bare desire to harm" restaurants and bars that allow smoking. Plaintiffs have provided no such evidence, and this argument necessarily fails.

I conclude that Plaintiffs have failed to show that the Act's exemptions for airport smoking lounges and licensed casinos, or its coverage of bingo halls, is irrational. Plaintiffs have failed to show that the Act violates the equal protection guarantees of the United States or Colorado Constitutions.

B.      Substantive Due Process

Plaintiffs contend that the Act denies them substantive due process under the Colorado and United States Constitutions by 1) imposing criminal liability on them for the acts of others, 2) applying criminal penalties in a manner that is impermissibly vague and 3) depriving Plaintiffs of their property rights in a manner that is not rationally related to the Act's stated purpose. I will consider each of these due process concerns.

1.      Criminal Liability for the Acts of Others

Imposing criminal liability based only on loose association with criminal activity offends due process. *See Scales v. U.S.,* 367 U.S. 203, 224-225, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). Plaintiffs contend that the Act violates this principle by making bar and restaurant owners liable for the criminal acts of their customers who choose to smoke in their bars and restaurants. § 25-14-208. However, the Act states explicitly that "smoking shall not be permitted and no person shall smoke in any indoor area." § 25-14-204(1). The plain language of the act thus prohibits both smoking by patrons and the allowing of smoking by bar and restaurant owners. The Act does not criminalize owners for the acts of others. It criminalizes their own actions allowing their patrons to smoke.

12

2.    Void for Vagueness

A law is "void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). A statute can be impermissibly vague either because "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or because "it authorizes or even encourages arbitrary and discriminatory enforcement." *Faustin v. City and County of Denver, Colo.,* 423 F.3d 1192, 1201-1202 (10th Cir. 2005). Statutes are similarly void for vagueness under the Colorado Constitution. *People v. Reed*, 932 P.2d 842, 845 (Colo. Ct. App. 1996), *People v. Quinn,* 549 P.2d 1332, 1334 (Colo. 1976).

Plaintiffs challenge the Act's small-employer exemption as unconstitutionally vague. Section 205(h) exempts employers with fewer than three employees whose premises are not open to the public. Section 203(5)(a) of the Act defines an employee as "any person" who "(I) performs any type of work for benefit of another in consideration of direct or indirect wages or profit," or "(II) provides uncompensated work or services to a business or nonprofit entity." Section 203(5)(b) states that this definition applies to "every person" covered by § 5(a) "regardless of whether such person is referred to as an employee, contractor, independent contractor, or volunteer or by any other designation or title." Plaintiffs argue that these definitions are impermissibly vague because they do not define minimum hours, times or calendar periods, and so make it impossible for a regulated business to reasonably understand how to qualify for the small employer exemption. I disagree.

The definitions of the Act may be strict, and therefore allow only a very narrow exemption for small businesses, but they do not lack clarity. The Act states clearly that it applies to "any

13

person" and "every person" regardless of how they are characterized. This language is sweeping and all-inclusive, but certainly not vague or ambiguous. Plaintiffs' real argument here seems to be that the narrowness of this exemption renders it essentially useless. In practice this may be true. But this is a policy argument against the narrowness of the exemption, not an argument that it is impermissibly vague.

3.    Fundamental Rights

Plaintiffs argue that the Act also violates the substantive due process guarantees of the United States and Colorado Constitutions. The due process clause of the 14th amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Glucksberg,* 521 U.S. at 719. Fundamental rights are those that are "implicit in the concept of ordered liberty," or a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 951, 112 S.Ct. 2791, 120 L.Ed.2d 674  (1992). The Colorado Constitution similarly protects fundamental rights under its due process guarantees. *People v. Strean,* 74 P.3d 387, 394 (Colo. Ct. App. 2002). Laws that abridge fundamental rights are subject to strict scrutiny, and "must be precisely tailored to further a compelling governmental interest." *Goetz v. Glickman,* 149 F.3d 1131, 1140 (10th Cir. 1998).

Plaintiffs argue first that the Act infringes on their fundamental right to use their property as they wish, and is therefore subject to strict scrutiny. However, the cases Plaintiffs cite do not support the startling proposition that all state infringements on property use, by definition, implicate fundamental rights. The Colorado Supreme Court in *Western Income Properties, Inc. v. City and County of Denver,* 485 P.2d, 120, 121 (Colo. 1971), stated explicitly that "The use to

14

which an owner may put his property is subject to a proper exercise of the police power," and is thus valid so long as it has "some tendency reasonably to serve the public health, safety, morals or general welfare." Plaintiffs' position is also not supported by *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), which addressed only whether federal courts have jurisdiction to consider an injury to property rights under 28 U.S.C. § 1343(a)(3), but did not address whether or to what extent property rights are fundamental rights subject to strict scrutiny.

Since the <u>general</u> right to enjoy one's property is not *per se* a fundamental right, Plaintiffs are left with the untenable argument that the more narrow right of bar and restaurant owners to allow smoking in their establishments is a fundamental right at the level of other rights recognized by the Supreme Court, such as the right to travel, the right to vote, the right to marry and the right to procreate. This notion is, as I stated in the June 2006 Order, far-fetched.

Plaintiffs argue additionally that the Act fails under the more lenient rationality review standard applicable to due process challenges that do not implicate fundamental rights. But this rationality review for due process challenges is the same as that for equal protection challenges. *See Allright Colorado, Inc. v. City and County of Denver,* 937 F.2d 1502, 1511-1512 (10th Cir. 1991) ("'Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them.'") (Internal citations omitted.) As discussed above, Plaintiffs cannot show that the Act's distinctions are irrational.

C.      <u>Special Legislation</u>

Article V, § 25 of the Colorado Constitution bars the enactment of Special Legislation. This constitutional provision defines Special Legislation as one of several enumerated categories of legislation, including "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." Plaintiffs contend that the Act's exemptions for licensed casinos, bars and restaurants within licensed casinos and cigar-tobacco bars grants exclusive privileges to these entities and is impermissible Special Legislation. However, the applicable standard governing Special Legislation is the same rational basis test that applies to equal protection doctrine. *See City of Greenwood Village v. Petitioners,* 3 P.3d 427, 441 (Colo. 2000) and *In re Interrogatory Propounded by Governor Roy Romer on House Bill 91S-1005,* 814 P.2d 875, 886 (Colo. 1991). When considering an enumerated provision in this Section, the Court's first inquiry is whether the class of affected businesses is illusory, that is, a class of one. *City of Greenwood,* 3 P.3d at 441. If the law impacts more than one individual, it is analyzed under a rational basis test identical to equal protection doctrine. *Id.* It is undisputed that the distinctions in the Act apply to more than one individual, so it is axiomatic that the rationality test applies. The case cited by Defendant Thiebaut, *People v. Sprengel,* 490 P.2d 65, 67 (Colo. 1971), reaches the same conclusion. ("'[I]f we can conceive of any reasonable state of facts bearing a reasonable relation to the purpose behind [the law] which could justify the classification made,' we must uphold the statute.") (Internal citations omitted.) As discussed above, Plaintiffs have not shown the Act to be irrational, so their Special Legislation claim fails.    D.

Retroactive Legislation

Plaintiffs argue that two provisions of the Act penalize behavior that occurred prior to the Act's effective date and thus constitute impermissible *ex post facto* laws. Both the Colorado and

16

the United States Constitutions bar *ex post facto* laws. In general, the principle underlying the ban

on *ex post facto* laws is to prevent the enforcement of legislation with a retroactive effect.

*Republic of Austria v. Altmann*, 541 U.S. 677, 717, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). A law

is not *ex post facto* merely because it operates on a set of conditions pre-existing enactment, "as

long as its punitive features apply only to acts committed after the statutory proscription becomes

effective." *People v. Billips,* 652 P.2d 1060, 1064 (Colo. 1982).

      Plaintiffs appear to argue that two provisions of the Act are impermissibly retroactive.

Section 203(4) defines a cigar-tobacco bar based on its status as of December 31, 2005. Since the

Act exempts cigar-tobacco bars from the prohibitions of the bill, this section is a look-back

provision that limits the class of exempt cigar-tobacco bars only to those that qualified as of

December 31, 2005. This section is not retroactive, because it uses a pre-status enactment only as

the basis for a prospective, post-enactment exemption.

      Section 204(2) is a different story. This Section states explicitly that "a cigar-tobacco bar

shall not expand the size and location in which it existed as of December 31, 2005." Moreover, §

208 makes it unlawful for any owner to violate any provision of the Act. On its face, this language

criminalizes activity, expansion of a cigar-tobacco bar, that occurred prior to enactment, when it

was still legal. The State Defendants contend that the Act can only be enforced prospectively.

They argue that if a cigar-tobacco bar owner expanded between December 31, 2005 and July 1,

2006, only their enhanced size that continued after July 1, 2006 would be actionable, not their

pre-enforcement expansion. The State defendants suggest that such a plaintiff can avoid penalties

by "returning to the location or size it held as of December 31, 2005." (State Defendant's Motion

for Summary Judgment, Page 21). Only the "continuing violation of the Act after July 1" is

subject to penalties. This tortured analysis amounts to sheer semantic hair-splitting. The plain language of the statute states that a plaintiff who legally expands his cigar-tobacco bar prior to July 1, 2006 would become subject to penalties as of July 1, 2006 for his pre-enactment expansion. This is impermissible *ex post facto* legislation.

However, Plaintiffs' claim on this point necessarily fails for different reasons: they lack standing to challenge this provision and challenges to this provision are now moot. There are three minimum requirements for constitutional standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). First, a plaintiff must have suffered an injury in fact. This injury must be both "concrete and particularized" and "actual or imminent." *Id.* Second, the defendant's action must be causally linked to plaintiff's injury. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* The party making the claim bears the burden of proving these elements. *Id.* at 561.

At the TRO stage of this case Plaintiffs alleged that at least one member of CER contemplated expanding its cigar-tobacco bar and thus was potentially effected by § 204(2). However, now that the Act has become effective, standing to challenge § 204(2) requires a plaintiff to actually face penalties for expansion in violation of § 204(2). Penalties for expansion that occurred after July 1, 2006 are, self-evidently, not retroactive, so only a plaintiff who did in fact expand prior to July 1, 2006 and therefore faces penalties for pre-enactment expansion can demonstrate an injury in fact. Also, striking the retroactive portions of the Act now, after enactment, could only render actual relief to a plaintiff who had already expanded; it would do nothing for a plaintiff who expanded after July 1, 2006.

Additionally, the passage of time has rendered any challenge to the retroactivity of §

204(2) moot. Mootness is "the doctrine of standing set in a time frame." *U.S. Parole Commission*

*v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In order to maintain an

actual case or controversy, a litigant's personal interest in a case must exist throughout the

existence of the litigation. *Id.* Here, the challenge to a retroactive law has become moot by the

simple passage of time. No plaintiff who has not already expanded can be retroactively subject to

§ 204, and Plaintiffs have not produced a plaintiff who did expand prior to July 1, 2006. Absent

such a plaintiff, this claim against retroactive enforcement of § 204(2) lacks standing and is moot.


E.      Single Subject Legislation

Finally, Plaintiffs contend that the Act violates Article V, Section 21 of the Colorado

Constitution, which states, in part, that "No bill . . . shall be passed containing more than one

subject." Plaintiffs argue that the State defendants' purported rational basis for defending the

Act's distinctions from an equal protection challenge – balancing the protection of public health

against the economic impacts of a smoking ban on casinos and casino towns – constitutes an

impermissible dual purpose under Section 21.

The purpose of § 21 is "(1) to notify the public and legislators of pending bills so that all

may participate in the legislative process; (2) to make the passage of each legislative proposal

depend on its own merits; and (3) to enable the governor to consider each single subject of

legislation separately in determining whether to exercise the veto power." *Ortiz,* 121 P.3d at 291.

The single subject requirement bars combining into a single bill "disconnected and incongruous

matters" or "subjects having no necessary or proper connection." *Id.* Section 25 is not intended to

"hinder or unnecessarily obstruct legislation," and must be "liberally and reasonably construed."
*Id.*

On its face, the Act addresses the health risks of indoor second hand smoke. Plaintiffs do not, and cannot argue that "coiled up in the folds" of the Act there is some hidden other subject unrelated to indoor smoking. *In re Title, Ballot Title and Submission Clause for Proposed Initiative 2001-02 # 43,* 46 P.3d 438, 440 (Colo. 2002). Rather, Plaintiffs contend simply that because the legislature made some exemptions based on fiscal and economic concerns, the Act necessarily runs afoul of § 21. By this logic, any time the legislature chooses to regulate for the public health and welfare it may not take into account the relative costs and benefits of its actions without violating § 21.  Plaintiffs do not cite any authority, and I am not aware of any, supporting such a proposition. The Act, even assuming its exemptions are based in part on economic concerns, does not violate § 21.

F.      Judicial Deference to the Legislature

Since several of the constitutional doctrines Plaintiffs invoke – equal protection, due process and special legislation – ultimately implicate the doctrine of rational basis review, it is worth reflecting on the public policy rationale underlying this doctrine. Courts should not deprive legislative branches of government of their proper prerogative to express the will of the people.

While Plaintiffs bemoan the virtual "un-reviewability" of state regulatory action under this admittedly deferential standard, there is a sound basis for such deference. In our constitutional system of separation of powers and federalism, it is not the role of federal Judges to substitute their policy judgments for those of state legislatures. We would "paralyze state governments if we undertook a probing review of each of their actions, constantly asking them to 'try again.'"

*Powers,* 379 F.3d at 1218. Federal judges do not have a "constitutional or Platonic" basis to judge the policy wisdom of economic regulations. *Id.* It is not the role of the judiciary to "sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations . . ." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

To hold the Act unconstitutional here, where no suspect class or fundamental right is at stake, would amount to nothing more than substituting one personal view of the public good for that of the duly elected state legislature. Under the United States Constitution and principles of federalism, striking the Act in this case would breed disrespect for the rule of law and exacerbate cynicism towards the proper role of the judiciary.

It is Ordered that Plaintiffs' Corrected Motion for Summary Judgment (Docket # 69) is DENIED, and the State Defendants' Motion for Summary Judgment (Docket #56) is GRANTED, and this action is DISMISSED, with costs awarded to Defendants.

**DONE and ORDERED,** this __19th__ day of October, 2006 at Denver, Colorado.

                                         __s/Lewis T. Babcock_____
                                         United States District Chief Judge